**John M. ST. PETER, Jr., Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

Nos. 2909–2913.

Municipal Court of Appeals for the District of Columbia.

Argued Feb. 5, 1962.

Decided Feb. 21, 1962.

1. We are informed that this case is now before the United States Court of Appeals for this circuit.

Charles Halleck, Washington, D. C., for appellant.

Ted D. Kuemmerling, Asst. Corp. Counsel, Washington, D. C., with whom Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee.

Before QUINN, Associate Judge, CAYTON (Chief Judge, Retired) sitting by designation under Code, § 11–776(b) and MYERS, Associate Judge of The Municipal Court for the District of Columbia, sitting by designation.

CAYTON, Acting Judge.

Appellant St. Peter and one Murray were charged jointly with seven traffic violations: striking a fixed object in the highway, driving at an illegal rate of speed, disobeying three stop signs, leaving after colliding, and reckless driving. When the defendants were arraigned they demanded a jury trial on the reckless driving charge. The cases came on for trial before the jury court, the reckless driving charge being tried by jury, as demanded, and the other charges being tried by the judge presiding.

We need state only so much of the facts as is necessary for a proper understanding of a crucial claim of error concerning a development during the trial. St. Peter had custody of his father's automobile and was in the company of four young men in Bethesda, Md. One of them was the co-defendant Murray, whom St. Peter permitted to drive. Approaching the District line on Wisconsin Avenue Murray was driving at 60 to 65 miles an hour, and St. Peter asked him to slow down, which he did. But soon Murray saw a Maryland police cruiser with a flashing red light standing at an intersection, and "floored the accelerator," driving into the District at a very high speed, estimated by police at 100 miles an hour. Then pursued also by a D. C. police cruiser, he passed three stop signs and soon struck a curb, damaging a wheel and blowing out a tire, and the wild ride came to an end. When St. Peter took the stand later in the trial he testified he was in the back seat and did not make a second protest about Murray's driving because of the danger of distracting one driving at such high speed.

After the officers testified the prosecutor called as a witness the co-defendant Murray. He was not represented by counsel and the trial judge refused to permit him to testify because his testimony might be self-incriminatory. The prosecutor asked for and was granted a recess, and without revealing his purpose to the court or to St. Peter or his counsel, took Murray before another judge, presiding in the traffic branch, and there Murray withdrew his not-guilty pleas and his demand for jury trial and pleaded guilty to the charges

of leaving after colliding and reckless driving. A fine was imposed on each of these charges, and the Government nolle prossed the other five charges against Murray.

The trial being resumed before the jury court, Murray was called as a prosecution witness against St. Peter, and testified at some length. After St. Peter testified the trial judge found him guilty of speeding, passing three stop signs, and striking a fixed object, these being the same five charges which had been nolle prossed as to Murray. The judge imposed jail sentences on St. Peter, with the remark "that there would not be two miscarriages of justice in one day." Although the exact sequence is not clear, the record shows that the judge found St. Peter not guilty of leaving after colliding, and that the Government ultimately nolle prossed the reckless driving charge.

■ We agree with appellant that the tactic adopted by the prosecution to make the co-defendant Murray available as a witness was irregular and improper, and violative of St. Peter's rights. The jury court judge had ruled that Murray could not be called as a witness. If Murray was to be permitted (or encouraged or induced) to withdraw his jury demand and his not-guilty pleas, such could only have been accomplished in open court before the jury judge. This requirement is spelled out in clearest language in Criminal Rule 14 of the trial court, which also prescribes that approval of the jury judge must be had to accomplish certification of such a case to another judge. Here such approval was not sought; indeed the jury judge was not even consulted about the matter, and was only to learn later that during a recess a defendant under his immediate jurisdiction (and the real actor in the offenses) had been taken before another judge and the serious charges against him "adjusted" by nolles and fines. This was in clear violation of the rule of court which had been adopted for the express purpose of preventing maneuvers of this kind.

■ A defendant who has submitted himself to the jurisdiction of the jury court is not permitted to shuttle his case elsewhere for more lenient disposition, or for any other advantage. The rule presents the same barrier to a prosecutor who would steal a march on one defendant by making available as a witness an otherwise ineligible co-defendant. We need not speculate to what extent this action "incensed" the jury judge, as appellant insists it did. It clearly impinged on St. Peter's rights and interfered with a fair trial and just decision of the charges against him. Contrary to the Government's statement that it "could not disadvantage the appellant," we think there is no escaping the conclusion that the irregularity tainted the remainder of the trial and the convictions and sentences which followed. For the reasons stated there must be a reversal.

The question as to whether appellant could be held criminally responsible for the offences committed by Murray has been extensively briefed and argued. But we need not decide the question, in view of the disposition we are making of the appeal on another ground.

Reversed.